3230663 Sharon Heath and Tim Heath Appellant versus the City of Naperville Appellee. Very well Mr. Heath if you're ready you may proceed. Thank you Your Honor. May it please the court, counsel. This matter is before the court because the trial court erred in granting summary judgment to the defendant. The underlying facts of this case are essential to the judgment to determination of whether the trial court's judgment should be overturned. Here the defendant has no evidence to suggest that there was no defect in the sidewalk at 1787 Villanova Drive on May 24th of 2020. Defendant has no evidence that Sharon did not trip on that defective sidewalk on May 24th which resulted in her falling and breaking her wrist amongst other injuries. Here the defendant's own employee testified that the in the sidewalk was two inches or more nine months after Sharon's fall. Further plaintiffs also have evidence which the defendant does not contest that shows that at the time of the occurrence and shortly thereafter that the defect in the sidewalk was two inches or more. The record also shows that the defect in the sidewalk had not changed in nine months between the time of the fall and the time that the defendant's employee Mr. Marino measured it. Also Mr. Marino who has for years done sidewalk examinations for the defendant for the purpose of determining whether the sidewalks are defective determined that the cause of the defect in this case was where Sharon fell was due to the root of the tree that was adjacent to the sidewalk and that root had been growing over time. Thus all of the evidence shows that the sidewalk defect did grow or decrease depending upon the weather. Further because the cause of the defect was the growth of the underlying tree root the sidewalk defect was not something that just suddenly occurred all at once. In addition to Mr. Marino's testimony plaintiffs also had evidence from Timothy, Sharon and Liam along with the Google photographs showing the defect that the defect occurred in 2012. The legal standard for what constitutes constructive notice is that the defect has to have been present for a sufficient length of time that the public authorities by the exercise of reasonable care and diligence might have known as such a condition. There's even if there's evidence that the city employees may have driven past and the defect and collected at Villanova. Do you concede that there's no evidence that a city sidewalk and roadway project inspector was in the vicinity of the property from the time it was resurfaced in 2009 until May of 2020? An answer to your question is no I don't concede that and for a number of different reasons. One first it's not a matter of whether the city inspector of engineer knows of the defect because the city is a corporation any of its employees who's within their duties to have knowledge of such things their knowledge is imputed to the city that's the Campton case and in this particular case there is a ordinance a city ordinance that says it is the duty of the field employees to recognize that there are defects in the pedestrian walkway. Do you have any concrete evidence sir that a city employee became cognizant of the defect in that same period from 2009 to 2020? Okay and the answer to that question judge is that when you say concrete evidence I do not have a direct statement in testimony there is however circumstantial evidence that they would have seen it and now they're in a we're in a situation where would the employees if well if we talk about a traffic accident case traffic the person runs a stop sign and they say well I didn't see the oncoming traffic but we know that they had an the case law Illinois law for a long time has said you cannot look and not see something that's clearly present in this particular situation we know and one of the things that the courts will look at is how conspicuous the particular defect is and for how long it's been there in this particular case it's clearly conspicuous it can be seen on photographs taken from the street so we have that we have photograph testimony of Miss Bischel who is the owner of the property of the house that's where this sidewalk is located and she said she could she could see the clearly see the defect despite the shade and in the photographs Miss even Mr. Marino who is the city inspector who came out nine months later and found and determined that the sidewalk was defective at that point in time he testified that yes you could see the defect even in the shade so this is clearly conspicuous thing that has been there since 2012 now you asked another another part of your question was and I'm your original question and I'm afraid now I've lost track of that one part was it was a city inspector we don't it isn't required to be a city inspector but we do have evidence that there were numerous people city employees that were coming by that within feet of that the defect on a regular basis every single year between 2012 and 2020 so as a consequence we have circumstantial evidence that's that would support a finding that they had actual notice now is that evidence sufficient for us to get summary judgment on that issue no that's a fact for the jury to decide by the same token because of that circumstantial evidence the trial court erred when it determined on it as a matter of law that there is no actual notice and that's because with actual notice there are two potential elements for establishing actual notice one is was there a report uh to the to the and I will agree there isn't there isn't uh evidence of a report to the authority but number two is that the an employee had actual knowledge of the uh defect and in this particular case the circumstantial evidence would suggest that yes they some one of those many employees had actually observed the defect and they the fact that nothing happened because of that uh employee doing it simply means that the city's procedures failed to act as they were supposed to act that's not a basis for determining that there's no actual notice and but besides actual notice there is constructive notice which is another basis for which the court could find notice as allowed under the tort immunity act and with respect to constructive notice the key elements are the length of time that the object was there or the defect was there and the conspicuity of that particular defect now can I ask can I ask a constructive notice question the fact that naperville apparently had a let's just call it an inspection system for lack of a different term under a 3-102b program uh if if that program covers the sidewalk in question doesn't that preclude us from finding constructive notice uh I okay one of the elements of the that inspection system and I'll put that in quotation marks is that it has to be one reasonably likely to find the potential unsafe defect given the cost and practicality of the situation and the fact of the matter is first we have the situation here where judge uh the judge did not decide uh the issue of whether the their affirmative defense of the uh inspection system meant that they were not liable that is an affirmative defense that is not part of the plaintiff's case they have the burden of carrying that affirmative defense and in this situation not only did the judge not find that they uh that affirmative defense applied but in addition as pointed out in my brief the fact of the matter is is that they didn't have a reasonable inspection system the the fact of the matter is is that they have a pro couple programs that may provide some inspection of the area but it wasn't one that would in any way reasonably uh find um potential defects as demonstrated by the fact that timothy's deposition and timothy's affidavit showed photographs of other defects that are in the immediate area of his house and they did you know that was those were there for years and have never been found either so this isn't a situation where their program was operational and it just missed one specific spot the fact of the matter is is that there's a number quite a number of spots around the that area that they have also haven't found because and the reason being is because the system that they have and i'll put that in quotation mark system um is uh not really an adequate one to find uh the potential defects um council in their um in their brief did do provide some simple math is the way it was described and they talked about how many uh um sidewalk squares there are in naperville and they quoted a figure of like nine hundred thousand the reality is is that you doesn't matter how many times you divide um a single thing up into smaller pieces you still have the one piece so you can divide an hour into 3 600 seconds the fact of the matter is you're still dealing with an hour when you look at mr marino's testimony as i put out pointed out in the reply brief the 20 of their time of five people's time is spent inspecting sidewalks and the reality is with 900 miles of sidewalks in naperville to be inspected they could easily inspect every one of those 900 miles within about four and a half months of the year of every single year and the reality is is that they don't the reality is is that that their inspection system and i'll put that in quotation marks again doesn't uh have records of anyone actually doing anything it doesn't have records showing that they actually have a system when the road is being resurfaced that the inspection be performed there's nothing that says they don't have any documents even saying that their one should be done um and i would point this pointed out that this case uh mr nichols testified he doesn't have any documentation the reason why he doesn't have any documentation is because that um if there's no defect if nothing no work is going to be corrected then therefore they don't keep any records of it yet in the ori versus city of naperville case what was involved in that case in that case there was an inspector that went out inspected that sidewalk now he didn't remember the inspection instead the city used a document that was created the day after the inspection to show that he had actually gone out into that and inspected the very area where um the plaintiff had fallen and further they they said um that that inspection noted specifically that there wasn't anything there that required any maintenance to be done anything to be improved or changed so they relied on that in order to be able to say that there was no defect despite the google photographs that were um trying to be offered into evidence to show that a defect was there so as a consequence we know from that case that naperville does keep records of their inspections and yet they don't have any records in this particular case so mr heath mr heath citizens are permitted to uh file complaints or give notice of specific defects are they not yes your honor timothy heath actually testified about that in deposition so they are permitted to do that at any time correct that is correct judge okay thank you um but that is not a system of inspection that is merely an ad hoc series of calls and all they the city of naperville does in response to those calls is go to that specific location and look at that specific spot so unless you have someone who's looking at all of the spots throughout the at all the sidewalks then you're not going to have a system that actually inspects all of the spots within the city the fact of the matter is is that the uh the sidewalk and curb maintenance program isn't a system of inspection at all it is merely a the city going out to um deal with potential calls i would also point out that as part of that system it says that the that the homeowner is responsible for repairing the sidewalk or responsible for any liability as a result of the uh of someone being injured on the sidewalk that is directly contrary to illinois law and it's the birth versus gorilla case which says that um the homeowner is not responsible for maintaining the sidewalk um in front of their house that's the city's property their result so mr he yes is the reasonableness of the system of inspection a question of fact for the fine back finder or the fact that there exists a system uh in an ordinance is that standing by itself enough to um disprove for example constructive possession i mean and what i mean how does that get figured out for lack of a better way of putting it um okay well that's actually a good question your honor and basically what i would say is that um there is two parts of it involved first you have to have a decision that perhaps something can be constitute a uh system of inspection that would be in theory a legal legal determination if plaintiff had brought in a motion for summary judgment saying that they don't have a reasonable system of inspection then that would be it would be first up to the trial court to decide whether as a matter of law that whatever they're saying they're doing constitutes a reasonable constitutes a system of inspection now once it's decided legally that what they're doing could be considered a reasonable inspection or an inspection system i should say then it's up to the finder of fact to determine whether under the law that was reasonably adequate to be able to find potential defects given the practicalities and costs that are involved and that's that's really what it comes down to is that's a separate whole analysis but that has to be done by the finder of fact not by the court so as a consequence i would respectfully i do i i'm sorry i'm out of time we are going to come back to you uh for your reply mr heath uh thank you very much any questions from justice peterson or justice davenport nothing further at this time all right mr heath we'll we'll come back to you thank you toberman thank you good afternoon may it please the court my name is kristen toberman i represent the city of naperville um the trial court correctly granted motion for summary judgment um in this case and the court correctly granted because in the sidewalk case the city has to have actual or constructive notice of a defect prior to liability attaching there is really no that there was no actual notice in this case because there nothing had been reported to the city before the city knew of no one else prior to the plaintiff who had been injured um and so therefore there was no actual notice there was no uh and i want to actually i do want to talk about why people employees driving down the street um doing other city tasks in work vehicles could not be considered actual notice um as well and that's for several reasons one is the the situations mentioned by the plaintiff in their brief were um brush pickup leaf pickup those are done by contractors those are done in the vehicle itself right um uh tree trimming there was no evidence i mean there was possible there was tree trimming seven years prior to the incident but it could it could have been more so that's putting it back to like 2012 or 13. um there's been no testimony of any city of naperville employee that got out of a truck and was standing on the sidewalk was standing on the parkway was doing anything that was remotely close to the sidewalk where they would have been in a position to see it the city over what is a field operations employee what is that because that's what's defined within the city that uh the city code states that every field operation employee has a duty to report a dangerous condition i'm asking what is a field operations employee i think the field the the this the personnel from the city who have the the duty to um inspect the sidewalks who have their job is specifically tasked to inspect the sidewalks with their attention looking at the sidewalks are the team of inspectors in the ted department which is the transportation engineering and development department now at the top of my head i can't tell you when that section of ordinance was put in that that used that language field operation employee but i can tell you that the people specifically tasked with going out getting boots on the ground looking at sidewalks measuring differentials are the team of city inspectors in the ted department and they are the ones that do it both when when we resurface roads and also when we receive um any kind of complaints or concerns from residents they are the group that go out there and do that um anyone else mentioned in this case at all whether it's um you know doing the leaf pickup the the brush pickup um there's just been no evidence that anyone was outside of a moving truck um doing anything which puts them in a position to actually see that sidewalk what the what the plaintiff wants you to do is really kind of set a precedent that a municipal employee in a municipal truck driving down the road is going to have knowledge of all the conditions of the sidewalks and that i think it puts a tremendous burden on on every municipality um in the state and that's something that you know the toward immunity act is really to protect um the burden on the taxpayers and and that such a precedent would be detrimental to um to everyone uh in the state um we do not believe there was actual notice from any city employee we don't believe there was any constructive notice from any city employee um the as far as constructive notice the court looks at um conspicuousness and both the plaintiffs testified that this defect was um under a dark shadow it was camouflaged there was shading making it difficult to see so based upon the plaintiff's own testimony this defect was not conspicuous it it was what about liam's affidavit um i just want to ask about that because judge mcjoint characterizes as um doesn't decide it on credibility he just basically determines it as speculation um but when i read the affidavit um and i realize it's there's a suggestion that it was bolstered after the ori decision i mean all of those types of arguments to my mind just go to credibility which isn't the point of a summary judgment motion i had an affidavit uh where the affiant says look i i rode my bike here in 2012 i wrote it i was there in 2018 and both times i noticed that the depression was more than an inch um if we take that as true isn't there an argument that this was uh constructively known by the city because it was an obvious defect right right well unfortunately you can't take it as true because as the as the plaintiff points out in in their in their brief in response to the city's argument about the affidavit is that if an affidavit affidavit is inherently improbable if it's contradictory to the laws of nature or universal human experience and the problem here is that universal human experience tells us that our memory does not get better as time goes past right well was was liam really asked that level of specificity from the city of naperville i mean he wasn't asked by naperville how many inches do believe the difference was between the two slabs he wasn't asked that that specific question was he he was not asked that specific question but the word specific was in the question posed to him and it was what do you specifically remember about this defect and what he responded to that was that he remembered riding his bike over it on his way to elementary school um and that he avoided that area he avoided that whole part of the sidewalk and that was his specific recollection um and so when we you know when six months later there is an affidavit that a 25 year old uh gentleman now states that when 11 years prior when he was 14 um he now remembers in apparently a neighborhood full of many uh sidewalk defects as council has pointed out he remembers this one specific defect that that he avoided being an inch or greater that is i believe so highly suspect so contradictory honestly to to i'm sorry it sounds like real good fodder for a heck of a cross-examination well i you know hopefully uh judge that you know we're not going to get to that to that point but i think the the affidavit really goes goes beyond um and uh you know it's just not only is not credible but it is beyond not credible so it's the point that i think the words used by um judge mcjoint where it was chock full of conjecture um that's kind of what what he used so miss toberman let me ask you this is the city challenging the admissibility of the google photographs no they did get the proper authentication from google to use the photographs so um so that isn't that isn't that but just so we're clear as i understand it so that the photographs come in they can show that there was a defect you could see something but not as to whether it was two inches or not at any specific time correct but it doesn't establish the timeline at least the number of years where at least it was noticeable to a camera right absolutely and that is really the inherent problem you have with google images and that's kind of where this court first kind of kind of laid the footprints down the path of how we use google images and sidewalk cases because the images show all the images show is a less than perfect sidewalk or maybe a sidewalk where the squares aren't flush but let's not forget the law in illinois is that the city doesn't have a duty to maintain perfect sidewalks we don't have to have completely flat and flush sidewalks at all times because for us if a sidewalk is de minimis it's not actionable and we know that the case law in illinois states that well you but you you agree that at the time your engineer measured the the difference in the two slabs it was not de minimis 100 agree with you and and the probable explanation for the difference according to the engineer was tree roots and i mean i'm i'm not a environmental scientist but we all know tree roots don't grow in a day so it wouldn't be unreasonable to presume that this defect did persist for i mean i don't want to put a time frame on it but not a not a small not a not a small period of time i i would agree that it with if it's based on tree roots then it's not going to be something that happens overnight like you can get with the freeze thaw cycle but the the problem here is when you have google images and they show a sidewalk that's not perfect and we don't have a duty to maintain a perfect sidewalk what is the point where that sidewalk is actionable and the city needs to do something with it right that's what's missing in this and unless unless you accept williams well absolutely absolutely and that's why his affidavit came in right after the ori decision when this court said you know in ori the um you know the court dealt more ori dealt more with the issue of measurements though right that we're not going to be doable on a google photograph well actually your honor the court said that plaintiff and ori plaintiff presented no evidence establishing how large the gap was at any given time or when the gap exceeded one inch making it subject to repair or replacement under the city's program so the court basically said hey listen even if we considered the google photographs even if we even if they were admissible there's no way to determine the measurement about that and and i would like to point out that the case in ori was um it really was involving a sidewalk over a bridge and that inspection that the inspector did that was a bridge inspector that was a specific engineer he uh and so that he is not one of of the squad of people who went out who go out daily to look at um sidewalks he specifically in doing his inspection of the top of the bridge and under the bridge and everything else um looked at the looked at the sidewalks overall and said you know i'm not noticing anything and he was familiar with our criteria our repair and replacement criteria so that the fact that we had a document on that that's something completely different the documentation we need for bridge inspections for the state of illinois is is completely different so it's it's kind of a different situation can you address the role of the 3102b program as it relates to our constructive notice analysis if any yeah absolutely i think it's really interesting that there are no cases out there on what a sidewalk what a proper sidewalk inspection program is so what what the city does um and our deputy city engineer was deposed and said that you know she believes we have a a very good robust program we inspect when we resurface roads we walk every single sidewalk along both sides of the road um we also do a lot of inspecting when people contact us and we are specifically putting information out there letting our residents know hey contact if you want us to inspect contact us on our website through social media and things like that that program is getting a lot of callers i think hundreds i can't remember what the exact number is in the interdeposition but it's getting a tremendous amount of callers um and in miss toberman excuse me but would you um agree that whether that system is reasonably adequate is more of a question of fact a question of fact for a jury to decide no i would not agree with that i i would not um i think that's an issue for um a court to determine that level um for that and and honestly i i think it would be wonderful to have some guidance um in the state about what a reasonable inspection system um is because and i also want to want to mention what happens you know when we go out there and inspect it's not just walk down the sidewalk and and note uh note each sidewalk and square and if there's a differential when they find a differential they spray paint over it um letting people know that the sidewalk square has a differential then they call department of public works who does a ramp who puts an asphalt ramp in eliminating that differential then it goes on a master list of all the sidewalks that are going to be repaired the following year so then another person is is compiling a master list then they have to get a contractor who goes out and does all the repairs all summer long and and then they have to go back out inspect after that so it's not just one person going out and inspecting it involves a lot of time from multiple different people within the city so i see my time is up justice peterson or justice davenport any additional questions i do not thank you mr toberman mr he your your volumes off uh and you may reply yeah sorry okay um really quickly the the first comment was about the fact that their employees were just driving down the street and they were just in a vehicle and the reality is if you look at those deposition transcripts you'll see that that in fact they can't rake the leaves into piles and break them off the parkways if they're still in vehicles they the spring pickup is not just in vehicles it's people going out and picking up things along the way there's numerous things they've actually uh they uh also put uh stripes on the uh in the area right by the uh davenport or villanova uh drive right across the parkway from where the defect was at they've resurfaced they corrected defects in the road years between 2012 and 2020 so clearly as shown in the pictures so clearly they weren't just driving by as been suggested further there's no to say that someone driving at 25 miles an hour or less wouldn't be able to see this particular defect from the street uh that's just something that they're making up well sharon tess sharon sharon in her deposition said she couldn't see it walking right over it what she and the reason why she couldn't see it that particular day at that particular time is because where the sun was in the spring of uh of 2020 and the the trees leaves on the trees if you go there are other pictures of taken at different times where you can clearly see it from that distance as you're approaching it because why because the sun and the shade isn't covering it and camouflaging it in the same way so there yes there are periods of time and periods of time of the year where uh the camouflage effect would it take place but the evidence at tri or in the depositions and stuff also establishes that there are other times when that that's not true okay where it's clearly visible and conspicuous from the parkway which is a completely completely different perspective than what sharon had when she was walking uh at the time of the collision or time of the occurrence council asked well well if they have if they have to follow the um they she said there was uh what point does the city have to intervene well if there is a defect a potential defect there the first thing the city has to do is just go out and look and that's what their curb maintenance program is there's a there's sidewalk and curb maintenance it's simply going out and taking a look to see whether in fact it meets the criteria she suggests that it's uh you know that our employees can't possibly be trained about those uh potential defects yet they have a website which tells you exactly what they look like these are not difficult things to to pick out you can see that whether there's a difference of approximately an inch between sidewalk slabs you can see where there's been uh uh the part of the sidewalk has been um fallen off and and corroded so that there's a large hole there um so there is this is not something difficult to do it's just a matter of the reality is is the testimony is is that nobody none of the supervisors were training any of their employees on this um the other thing is the question was asked about when who is a city the field operations employee and council uh tried to limit it to certain individuals um and the reality is is that the regulation or the uh ordinance has two sentences um one under paragraph two there um one is the city sidewalk and roadway project inspectors and engineers shall be trained to recognize unreasonably dangerous conditions in the public sidewalks along the public path of a pedestrian travel so that's the first sentence and that limits it to roadway project inspectors and engineers but then it says it shall be the duty of every field operations employee becoming cognizant so of unreasonably dangerous conditions so that's not those people that she just mentioned that's everybody that's out in the field um so as a result on i believe that under the circumstance of this case in the evidence of this case i believe that the trial court erred in um in granting summary judgment trial courts uh the idea of liam who is trained as an engineer and who was learning to be in uh taking the classes to be able in high school to be able to become an engineer at the time that we're talking about um would certainly be competent to testify to those things at trial so as a consequence the summary judgment should be reversed and the case should be remanded for trial thank you very much your honors justice peterson or justice davenport nothing all right we thank both sides for spirited arguments we will take the matter under uh advisement and issue a decision in due course